1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**
                            **DISTRICT OF NEVADA**
7

8

9   MIGUEL A.  RAMIREZ,                    )        3:07-cv-0294-RCJ (RAM)
                                           )
10                 Plaintiff,              )        **REPORT AND RECOMMENDATION**
                                           )        **OF U.S. MAGISTRATE JUDGE**
11       vs.                               )
                                           )
12   ADAMSON, et al.,                      )
                                           )
13                 Defendants.             )
    _____    )
14

15          This Report and Recommendation is made to the Honorable Robert C. Jones, United

16   States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant

17   to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.  Before the court is

     Defendants' Motion for Summary Judgment. (Doc. # 154 and Doc. # 159.)[1]  Plaintiff has
18
     opposed (Doc. # 165-Doc. # 171) and Defendants replied (Doc. #179). After a thorough review,
19
     the court recommends that the motion be granted.
20

21                                   **I.  BACKGROUND**

22          At all relevant times, Plaintiff Miguel A. Ramirez (Plaintiff) was an inmate in custody

23   of the Nevada Department of Corrections (NDOC).  (Pl.'s Am. Compl. (Doc. # 37) 1.)

     Defendants are various NDOC officials and employees.  (Doc. # 37 1-7.)  Plaintiff, a *pro se*
24
     litigant, brings this action pursuant to 42 U.S.C. § 1983.  Plaintiff is currently housed at Ely
25
     State Prison (ESP), however, the allegations of Plaintiff's complaint pertain to events taking
26
     place at ESP, Nevada State Prison (NSP), High Desert State Prison (HDSP), and Lovelock
27

28          _____
                    [1]        Refers to court's docket number.

1   Correctional Center (LCC).  Plaintiff asserts violations of his rights under the United States

2   Constitution as well as the Nevada Constitution.  Plaintiff originally filed his complaint on

3   March 20, 2007, in the Seventh Judicial District Court of the State of Nevada, and it was

4   properly removed to federal court.  (Defs.' Pet. for Removal (Doc. # 1).)  Plaintiff's amended

5   complaint was filed November 26, 2008.  (Doc. # 37.)

6   ## II. LEGAL STANDARD

7   The purpose of summary judgment is to avoid unnecessary trials when there is no

8   dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

9   18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in

10  favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008)(citing

11  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate

12  if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

13  there is no genuine issue as to any material fact and that the movant is entitled to judgment

14  as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on

15  the material facts at issue, however, summary judgment is not appropriate. *Warren v. City*

16  *of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

17  The moving party bears the burden of informing the court of the basis for its motion,

18  together with evidence demonstrating the absence of any genuine issue of material fact.

19  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence

20  in an inadmissible form, only evidence which might be admissible at trial may be considered

21  by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

22  In evaluating the appropriateness of summary judgment, three steps are necessary: (1)

23  determining whether a fact is material; (2) determining whether there is a genuine issue for

24  the trier of fact, as determined by the documents submitted to the court; and (3) considering

25  that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to

26  materiality, only disputes over facts that might affect the outcome of the suit under the

27  governing law will properly preclude the entry of summary judgment; factual disputes which

28  2

1    are irrelevant or unnecessary will not be considered. *Id.*

2        In determining summary judgment, a court applies a burden shifting analysis. "When

3    the party moving for summary judgment would bear the burden of proof at trial, 'it must come

4    forward with evidence which would entitle it to a directed verdict if the evidence went

5    uncontroverted at trial.' In such a case, the moving party has the initial burden of establishing

6    the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

7    *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)(citations omitted).

8    In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

9    moving party can meet its burden in two ways: (1) by presenting evidence to negate an

10    essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

11    party failed to make a showing sufficient to establish an element essential to that party's case

12    on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 323-24. If

13    the moving party fails to meet its initial burden, summary judgment must be denied and the

14    court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398

15    U.S. 144, 159-60 (1970).

16        If the moving party satisfies its initial burden, the burden shifts to the opposing party

17    to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

18    *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

19    the opposing party need not establish a material issue of fact conclusively in its favor. It is

20    sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

21    parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

22    *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(citation omitted). In other words, the nonmoving

23    party cannot avoid summary judgment by relying solely on conclusory allegations that are

24    unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation

25    omitted). Instead, the opposition must go beyond the assertions and allegations of the

26    pleadings and set forth specific facts by producing competent evidence that shows a genuine

27    issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. At 324.

28

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

### III.  DISCUSSION

### A.   CLAIMS ASSERTED AGAINST NDOC

Plaintiff names the NDOC as a defendant in this action.  The Eleventh Amendment bars suits against state agencies as they are considered an "arm of the state" and not a "person" for the purpose of § 1983.  *See Hyland v. Wonder*, 117 F.3d 405, 413 (9th Cir. 1997), *amended*, 127 F.3d 1135 (9th Cir. 1997); *Doe v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836 (9th Cir. 1997); *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). Therefore, NDOC should be dismissed from this action.

### B.   EXHAUSTION

#### 1.    Standard

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues.  *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  "Proper exhaustion" refers to "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (citation omitted) (emphasis in original).

4

This district has interpreted *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F.Supp.2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'." *Id.* In other words, "a defendant must show failure to meet both tests to succeed" in dismissing a complaint for failure to exhaust administrative remedies. *Id.* at 1136.

The failure to exhaust is an affirmative defense, and a defendant bears the burden of raising and proving failure to exhaust. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust administrative remedies is treated as a matter in abatement, and is properly raised in an unenumerated 12(b) motion. *Wyatt*, 315 F.3d at 1119 (citations omitted); *see also Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988). As such, failure to exhaust is not properly raised in a motion for summary judgment, but if it is so raised, it should be treated as a motion to dismiss. *Ritza*, 837 F.2d at 368 (citations omitted). If the court ultimately finds that Plaintiff has not exhausted his nonjudicial remedies, the proper remedy is dismissal of his claims without prejudice. *Wyatt*, 315 F.3d at 1119-20, as noted in *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see also Ritza*, 837 F.2d at 368. In *Ritza*, the court noted the distinction between summary judgment and dismissal for matters in abatement as it concerns the court's authority to resolve factual disputes:

> [One] reason why a jurisdictional or related type of motion, raising matter in abatement...,should be distinguished from a motion for summary judgment relates to the method of trial. In ruling on a motion for summary judgment the court should not resolve any material factual issue...If there is such an issue it should be resolved at trial...On the other hand, where a factual issue arises in connection with a jurisdictional or related type of motion, the general view is that there is no right of jury trial as to that issue...and that the court has a broad discretion as to the method to be used in resolving the factual dispute.

*Ritza*, 837 F.2d at 369 (citations omitted). Therefore, the court must treat the exhaustion issue as one raised in an unenumerated 12(b) motion, and is tasked with resolving factual

issues that arise.

### 2.    Exhaustion Procedure

For prisoners within the NDOC system, exhaustion of administrative remedies requires compliance with the Inmate Grievance Procedures set forth in NDOC Administrative Regulation (AR) 740. (Doc. # 154 9, Ex. E. at 139-157.) The administrative procedure consists of: (1) an Informal Level Grievance; (2) a First Level Grievance; and (3) a Second Level Grievance. (*Id*. at 148.) A "grievance" is defined as "[a] written complaint consisting of one claim, issue, circumstance or action considered by the inmate to be injurious or unjust..." (*Id*. at 141.)

### 3.    Analysis

(1) Plaintiff alleges that from August 12, 2005 to November 21, 2005, while housed at NSP, his administrative segregation classification was never reviewed and/or he was not permitted to make a personal appearance before a classification committee during any reviews. (Doc. # 37 19 at ¶ 35.) After reviewing Plaintiff's grievance records from NSP, the court finds there is no evidence that Plaintiff exhausted his administrative remedies with respect to this claim, and it should be dismissed without prejudice.

(2)  Plaintiff alleges that a disciplinary hearing was conducted on June 27, 2006 at LCC and he was not permitted to call witnesses, present or view evidence, or proffer mitigating evidence. (Doc. # 37 26 at ¶¶ 73-84.) In addition, he alleges he was handcuffed which impeded his ability to represent himself. (*Id*. at ¶ 77.) He asserts that he was threatened to enter into a plea and made statements on the record after the tape recorder was off. (*Id*. at ¶ 78.) Plaintiff admits that he submitted a Notice of Appeal regarding the disciplinary hearing, which was rejected as improper. (*Id*. at ¶¶ 82-83.) Plaintiff resubmitted the Notice of Appeal and was served with and signed an extension of time request form granting LCC staff additional time to respond. Plaintiff does not allege what occurred next with respect to his grievance. There is no evidence in the record that Plaintiff properly exhausted his administrative remedies, and it should be dismissed without prejudice.

1
2
3
4

(3)     Plaintiff claims that he was denied access to courts because the grievance system is not available to him. (Doc. # 37 30-32 at ¶¶ 99-109.) The PLRA only requires that inmates exhaust available remedies. The essence of this claim, as alleged, is that the remedies were not available to him, and therefore the court will address the claim on its merits below.

5
6
7
8
9
10

(4)     Plaintiff claims that the mismanagement of the grievance procedure, particularly at HDSP, impeded and obstructed his ability to file this action as well as a small claims complaint. (Doc. # 37 32-34 at ¶¶ 110-122.) Plaintiff addressed the underlying property claim and alleged inadequacies in the law library, but did not grieve the inadequacy of the grievance system as it concerned his access to courts. As a result his claim set forth in these paragraphs should be dismissed without prejudice.

11
12
13
14

(5)     Plaintiff alleges deliberate indifference to conditions of confinement in the form of double celling at HDSP and ESP. (Doc. # 37 39-40 at ¶¶ 150-160.) After reviewing Plaintiff's grievance files from HDSP and ESP, the court finds Plaintiff failed to exhaust his administrative remedies. This claim should be dismissed without prejudice.

15
16
17

(6)     Plaintiff alleges that HDSP failed to provide adequate heating and air conditioning. (Doc. # 37 43-46 at ¶¶181-198.) Plaintiff failed to exhaust his administrative remedies regarding this claim, and it should be dismissed without prejudice.

18
19
20
21

(7)     Plaintiff alleges a violation of his Eighth Amendment rights as a result of being deprived of outdoor exercise at HDSP (Doc. # 37 46-49 at ¶¶ 199-219.) Plaintiff failed to exhaust his administrative remedies on this claim, and it should be dismissed without prejudice. (*See* Doc. # 154 Ex. D at 118-124)

22
23
24
25
26

(8)     Plaintiff alleges that he has been denied adequate dental care, throughout NDOC, but in particular at HDSP. (Doc. # 37 49-51 at ¶¶ 220-231.) Plaintiff's grievance addressing inadequate dental care was denied as improper, because Plaintiff did not limit the grievance to one issue as required under AR 740. (Doc. # 154 Ex. D at 116.) Plaintiff failed to properly exhaust under this claim, and it should be dismissed without prejudice.

27
28

(9)     Plaintiff alleges inadequate food and food service at HDSP, and throughout NDOC facilities.  (Doc. # 37 51-53.)  Plaintiff's grievance file for HDSP only reveals an Informal Level Grievance concerning this claim.  (Doc. # 154 Ex. D at 125-129.)  As a result, this claim should be dismissed without prejudice.

(10)     Plaintiff alleges inadequate access to personal hygiene items at HDSP.  (Doc. # 37 54-57 at ¶¶ 250-271.)  Plaintiff filed a Second Level Grievance stating that no nail clippers were made available to him.  (Doc. # 154 Ex. D 111.)  Because Plaintiff failed to file an Informal Level or First Level Grievance, his grievance was rejected.  (*Id*. at 112-113.)  Plaintiff failed to properly exhaust this claim, and it should be dismissed without prejudice.

(11)     Plaintiff alleges that his visiting privileges were unfairly curtailed.  (Doc. # 37 57-58 at ¶¶ 272-277.)  Plaintiff failed to exhaust his administrative remedies concerning this claim, and it should be dismissed without prejudice.

(12)     Plaintiff complains that he received inadequate responses concerning his clothing, laundry, and bedding inquiries.  (Doc. # 37 58 at ¶¶ 278-281.)  Plaintiff failed to exhaust his administrative remedies concerning this claim, and it should be dismissed without prejudice.

(13)     Plaintiff claims that cleaning supplies at HDSP were inadequate and unavailable.  (Doc. # 37 58-59 at ¶¶ 282-286.)  Plaintiff failed to exhaust his administrative remedies concerning this claim, and it should be dismissed without prejudice.

(14)     Plaintiff claims that HDSP inmates are plagued by a variety of insects and pests.  (Doc. # 37 at 59-60 at ¶¶ 287-294.)  Plaintiff failed to exhaust his administrative remedies concerning this claim, and it should be dismissed without prejudice.

(15)     Plaintiff claims that he was not able to participate in "rehabilitative programs" at HDSP.  (Doc. # 37 60-61 at ¶¶ 295-300.)  Plaintiff failed to exhaust his administrative remedies concerning this claim, and it should be dismissed without prejudice.

(16)     Plaintiff alleges inadequacies with respect to the lighting at HDSP.

8

1    (Doc. #37 at ¶¶ 161-180.)  Plaintiff filed an Informal Level Grievance concerning the

2    lighting at HDSP on May 13, 2006.  (Doc. # 154 Ex. D at 74-75.)  Plaintiff filed a First

3    Level Grievance concerning the lighting on June 11, 2006.  (*Id*. At 76.) The response to

4    the Informal Level Grievance was upheld and Plaintiff was advised that if he required

5    the main cell lights to be left on for a longer period, he should contact the unit officers.

6    (*Id*.)   There is no record that Plaintiff filed a Second Level Grievance concerning the

7    lighting issue.  Accordingly, Plaintiff failed to exhaust his administrative remedies and

8    this claim should be dismissed without prejudice.

9    **C.    STATUTE OF LIMITATIONS**

10       Plaintiff alleges that he suffered permanent hearing loss in both ears as a result of being

11   in de facto administrative segregation for six years without due process of law as set forth in

12   AR 506 and AR 507 and/or Institutional Procedures (IP) 5.13 and 7.17.  (*See* Doc. # 37 14-16

13   at ¶¶ 1-10.)

14       Defendants contend this claim is barred by the statute of limitations because Plaintiff

15   alleges he completed the grievance procedure with respect to this claim on October 28, 2004

16   and his complaint was filed March 20, 2007.  (Doc. # 154 14-15.)

17       Section 1983 does not contain its own statute of limitations.  Therefore, the federal

18   courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims.

19   *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Johnson v. State of California*, 207 F.3d 650,

20   653 (9th Cir. 2000)(citation omitted).  In Nevada, the statute of limitations for  § 1983 actions

21   is two years.  Nev.  Rev.  Stat. § 11.190(4)(e); *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir.

22   1989).  Federal law determines when a cause of action accrues when the plaintiff knows or has

23   reason to know of the injury which is the basis of the action.  *Bagley v.  CMC Real Estate

24   Corp.*, 923 F.2d 758, 760 (9th Cir.  1991).

25       Here, Plaintiff had two years from the acts allegedly caused by Defendants within which

26   to commence his § 1983 claims.  *See* Nev.  Rev.  Stat. § 11.190(4)(e).  An action is deemed to

27   be commenced when the complaint is filed. Fed.R.Civ.P. 3.  Here, Plaintiff's initial complaint,

28

9

1   was filed March 20, 2007.  (Doc. # 1.)  Even accounting for the grievance process with respect

2   to these allegations, which appears to have ended on October 28, 2004, this claim is barred

3   by the applicable statute of limitations, and should be dismissed with prejudice.

4   **D.    DUE PROCESS**

5          **1.    Unavailability of Grievance Procedure**

6        Plaintiff alleges that he was denied access to the courts because the grievance system

7   mechanism was made unavailable to Plaintiff.  (Doc. # 37 30 ¶¶ 99-109.)  While Defendants

8   argue that Plaintiff failed to exhaust his administrative remedies on this claim, Plaintiff is

9   alleging that the grievance procedure itself was unavailable to him.  The court will therefore

10  analyze this claim on its merits.

11       An inmate does not have a right to a prison grievance procedure. *Olim v. Wakinekona*,

12  461 U.S. 238, 249 (1983); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002)(citing

13  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)).  Instead, the grievance process confers

14  a procedural right only. *Buckley*, 997 F.2d at 495. Without more, a prison official's failure to

15  adequately respond to an inmate's grievance is not actionable under § 1983. *Id.*  In addition,

16  the court notes that Plaintiff's claim is belied by the record, which demonstrates the grievance

17  system has been available to him.  Summary judgment should be granted as to this claim.

18       To the extent Plaintiff asserts a violation of his right to access the courts, the

19  court addresses this claim below.

20         **2.    Personal Property**

21       Plaintiff alleges that on August 12, 2005, he was issued an unauthorized property notice

22  that   his Hobby Craft materials and lamp were being confiscated, and he was given an

23  ultimatum to either mail out, donate, or destroy the property.  (Doc. # 37 19-20 at ¶¶ 36-37.)

24  Plaintiff asserts that Defendants deprived him of his liberty interest in the property by

25  disposing of it arbitrarily and denied him meaningful opportunity to file a small claims action.

26  (*Id.* at ¶ 37.)  Plaintiff also challenges the prison regulation that eliminates storage of non-

27  essential property for inmates placed in administrative segregation.  (*Id.*)

28

Prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). The Due Process Clause protects prisoners from being deprived of property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, whether intentional or negligent, "[a]n unauthorized ...deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Nevada law provides for civil actions for the wrongful deprivation of property by state officials. *See* Nev. Rev. Stat. § 41.041, Nev. Rev. Stat. § 41.0322.

With respect to Plaintiff's challenge to the regulation eliminating storage of non-essential property, other than making a conclusory allegation, Plaintiff fails to fully allege or provide evidence concerning how this regulation is unconstitutional. Without any additional facts or evidence, Plaintiff's claim fails and Defendants are entitled to summary judgment.

With respect to the due process claim concerning his personal property, Plaintiff fails to tie this allegation to any particular defendant. The complaint refers the court to Exhibit L, but this exhibit also fails to tie any particular defendant to the alleged deprivation. A claim brought under § 1983 requires a specific relationship between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). In addition, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*. When a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Plaintiff must show that a supervisory defendant either: personally participated in the alleged deprivation, knew of the violations and failed to act to prevent them, or promulgated or implemented a policy so deficient that it is a repudiation of constitutional rights and is the moving force behind the violation. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d

11

1    1040, 1045 (9th Cir. 1989).

2        Plaintiff has failed to establish personal participation or supervisory liability on the part

3    of any of the Defendants. As a result, summary judgment should be granted.

4    **E.    FIRST AMENDMENT**

5        **1.    Pornographic Magazines**

6        Plaintiff alleges that on October 7, 2004, ESP Officer Oxborrow and Officer Irvin

7    confiscated a sexual publication from Plaintiff's possession without justification and in

8    violation of his First Amendment right to freedom of speech. (Doc. # 37 17 at ¶ 17.) He admits

9    that the publications confiscated "were an amalgamation of the magazines Playboy, Penthouse

10   & Hustler." (*Id.* at ¶ 18.)

11       In addition, Plaintiff alleges that on January 31, 2004, he submitted an inmate book

12   request form to ESP seeking authorization to receive soft-core sexual publication subscription

13   to a magazine called Lollypops, distributed by Hustler Magazine. (Doc. # 37 17 at ¶ 21.) He

14   states that the request was approved, but on August 19, 2004, officials refused to give him the

15   subscription. (*Id.* at ¶ 22.) Plaintiff asserts this violated his rights under the First Amendment

16   of the United States Constitution as well as the Nevada Constitution. (*Id.* at ¶ 24.)

17       Defendants correctly point out that the court has previously determined that the policy

18   of prohibiting access to sexually explicit materials at NDOC, set forth at AR 750, is

19   constitutional.

20       NDOC claims that it restricts certain forms of adult content for legitimate penological

21   reasons. (Doc. # 159 3.) NDOC developed AR 750, effective May 8, 2002, which, in part,

22   restricts certain forms of adult content. (*Id.* at 5, Ex. C.) AR 750.03 § 1.4.6.2 prohibits

23   inmates from receiving magazines or publications that are "detrimental to the security, good

24   order, or discipline, or which facilitates criminal activity, including but not limited to...content

25   [that] is sexually explicit material, which by its nature poses a threat to the security, good

26   order, or discipline of the institution, or facilitates criminal activity." (Doc. # 159 Ex. C. at 80-

27   81.) Sexually explicit material is defined as: "an act of sexual intercourse...or penetration of

28                                    12

any part of a person's body with an object either of a male or female gender." (*Id.* at 78.)

The Ninth Circuit has previously determined that a policy prohibiting possession of sexually explicit material is constitutional. *See Mauro v. Arpaio*, 188 F.3d 1054, 1057 (9th Cir. 1999). When considering prison regulations on incoming publications, "[s]ome content regulation is permissible in the prison context." *McCabe v. Arave*, 827 F.2d 634, 638 (9th Cir. 1987); *see also Thornburgh v. Abbott*, 490 U.S. 401, 415-16 (1989); *Mauro*, 188 F.3d at 1059. In light of concerns about sexual harassment of prison guards and other inmates, prison officials may prohibit receipt of sexually explicit materials. *See Bahrampour v. Lampert*, 356 F.3d 969, 976 (9th Cir. 2004); *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999); *Mauro*, 188 F.3d at 1060. To defeat summary judgment, Plaintiff must demonstrate that the regulation at issue is not reasonably related to legitimate penological interests, or that there is a genuine dispute of material fact regarding the applicability of the regulations to the materials. *See Bahrampour*, 356 F.3d at 973.

In making the "reasonableness" inquiry, the court is to consider the factors set forth in *Turner v. Safely*, 482 U.S. 78 (1987): (1) whether there is a valid rational connection between the restriction and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether accommodating the asserted constitutional right will have a significant negative impact on prison guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are obvious, easy alternatives to the restriction showing that it is an exaggerated response to prison concerns. *Turner,* 482 U.S. at 89-90; *Mauro*, 188 F.3d at 1058-59.

Preliminarily, Plaintiff does not appear to dispute that the confiscated magazines and the magazine he seeks to obtain a subscription for contain sexually explicit material. Accordingly, there is no genuine issue of material fact as to whether the magazines contain the content prohibited by AR 750.

### a. Rational Connection

The court must first examine whether there is a rational connection between the

13

challenged policy and a legitimate governmental interest. *See Turner*, 482 U.S. At 89. "A regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Id*. At 89-90. This requires the court to determine whether the governmental objective underlying the policy is (1) legitimate, (2) neutral, and (3) "rationally related to the objective." *Thornburgh*, 490 U.S. at 414; *Mauro*, 199 F.3d at 1059.

Defendants assert that AR 750's ban on sexually explicit materials exists for the following reasons: (1) many inmates would object to the materials, if allowed, and because cell assignment is random and because some inmates have a propensity to display sexually explicit materials, it could create problems between inmates which would jeopardize security and order; (2) there are a large number of sex offenders in prison, many undergoing treatment and the availability of sexually explicit material would be counter-productive to the treatment of sex offenders in the prison population; (3) despite a zero tolerance policy of prison rape, it does occur, and pornography can contribute to sexual tension which could manifest in sexual battery, sexual "grooming," or the sexual assault of another inmate; (4) freely available, sexually explicit pornography would contribute to lude behavior and harassment toward female correctional workers. (Doc. # 159 3, Ex. D.)

It is beyond question that both security and rehabilitation are legitimate penological interests. *See Thornburgh*, 490 U.S. at 415; *Turner*, 482 U.S. at 91; *Pell v. Procunier*, 417 U.S. 817, 823 (1974); *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974). Moreover, in *Mauro*, the court stated: "reducing sexual harassment in particular is likewise legitimate." *Mauro*, 188 F.3d at 1059. In *Bahrampour*, the Ninth Circuit ruled that the Oregon Department of Corrections' regulation similar to AR 750 supported the legitimate penological interests of reducing prohibited behaviors such as sexual aggression, gambling, and maintaining respect for legitimate authority. *Bahrampour*, 356 F.3d at 973. In addition, the court there held that "there is a rational connection between the availability of sexually explicit materials and harmful inmate behavior such as rape and other forms of sexual predation." *Id*. at 976.

14

1   Accordingly, the court finds that the prohibition on sexually explicit material is reasonably

2   related to legitimate governmental interests.

3       The requirement that the policy be "neutral" is met in this case. To be "neutral," the

4   regulation or practice must further an interest that is unrelated to suppression or expression.

5   Here, AR 750 draws distinctions between publications solely on the basis of the potential

6   implications for prison security and meets the neutrality test. *Turner,* 490 U.S. at 415-16

7   (quotations and citations omitted).

8       It is clear the policies are rationally related to the jail's legitimate objectives. The

9   relationship between the possession of sexually explicit materials and the policies set forth in

10  AR 750 aid in security, good order, and discipline, and prevent criminal activity. The

11  relationship between preventing inmates from receiving and possessing sexually explicit

12  materials and the goals are not so remote as to render the policy arbitrary or irrational. *See*

13  *Mauro*, 188 F.3d at 1060. Accordingly, Defendants meet the first factor in the *Turner* test.

14          **b. Alternative Avenues**

15      The next factor the court must consider is "whether there are alternative means of

16  exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. "Where

17  'other avenues' remain available for the exercise of the asserted right, courts should be

18  particularly conscious of the 'measure of judicial deference owed to corrections officials...in

19  gauging the validity of the regulation...'" *Id.* (citations omitted).

20      In applying this factor, "the right in question must be viewed sensibly and expansively."

21  *Thornburgh*, 490 U.S. at 417 (quotations omitted). For example, in *Turner*, the Court upheld

22  a regulation that restricted correspondence between inmates at different state prisons,

23  rejecting the argument that inmates should be afforded other means of communicating at

24  other institutions, finding sufficient expression remained available to the inmates. *See*

25  *Turner*, 482 U.S. at 92. In *Thornburgh*, the Court upheld a regulation restricting the

26  incoming publications that inmates could receive and possess, finding sufficient alternative

27  means available to the inmates because the regulations permitted "a broad range of

28

publications to be sent, received, and read." *See Thornburgh*, 490 U.S. at 417-18.

In *Mauro*, the court stated that, "a sensible and expansive view of the constitutional right infringed by the jail's policy is the 'right to receive sexually explicit communications.'" *Mauro*, 188 F.3d at 1061. Viewed in this manner, there are many alternative means available to Plaintiffs to exercise their right to receive sexually explicit communications.

Although AR 750 bans inmates from receiving and possessing sexually explicit materials depicting sexual intercourse, fellatio, sodomy, cunnilingus, sado-masochistic abuse, or penetration of any part of a person's body with an object either of a male or female gender, it does not ban sexually explicit letters or phone calls. As such, other avenues remain available for Plaintiff to exercise his right to receive sexually explicit communications. The Defendants meet the second factor in the *Turner* test.

### c.  Impact on Others

The third factor is the impact that accommodation of the asserted constitutional right would have on prison personnel, other inmates, and the allocation of prison resources. *See Turner*, 482 U.S. at 90. "When accommodations of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." Id. This factor requires the court to determine the impact of allowing inmates unrestricted access to sexually explicit materials. *See id*. at 92.

The impact of such unrestricted access would be significant. The policy secures the security, order, and discipline of the institution, and prevents criminal activity by preventing battery and sexual predation, aiding in rehabilitation of sex offenders, avoids security and housing problems between inmates, reduces sexual tensions, and reduces sexual harassment of female correctional workers and staff. Permitting the access of sexually explicit materials would pose threats to security and discipline, cause disorder and an increase in criminal activity in NDOC.

Where the right in question 'can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike, [w]e should defer to the 'informed decision of correctional officials.'" *Thornburgh*, 490 U.S. at 418 (citation omitted). If accommodations for a constitutional right would cause significant changes within the prison environment, the courts should give deference to the prison officials who are responsible for safe, effective, and efficient administration of the prison system. *Turner*, 482 U.S. at 90. The impact of unrestricted access to sexually explicit material would compromise the security, order, and discipline, and increase criminal activity within NDOC.  Defendants meet the third factor of the *Turner* test.

### d. Exaggerated Response

The fourth factor is whether the policy is an exaggerated response to the NDOC's concerns.  *Turner*, 482 U.S. At 90-91; *Mauro*, 188 F.3d at 1062.

> [T]his is not a "least restrictive analysis" test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint.  But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

*Turner*, 482 U.S. At 90-91 (citation omitted).

The burden is on the prisoner challenging the regulation to show there are obvious, easy alternatives to the regulation.  *Id*. (citation omitted).  The court is unaware of any available workable alternatives at *de minimis* cost to valid penological interests raised by Plaintiff.  Therefore, Defendants meet the fourth factor.  Accordingly, summary judgment should be granted as to this claim.

### 2.   Retaliation

Plaintiff alleges that the NDOC officials named in his complaint sought to transfer him in retaliation for his civil litigation against NDOC officials. (Doc. # 37 21 at ¶ 43-53, 63.)

Defendants argue that Plaintiff's retaliation claims fails because Plaintiff was transferred between prison facilities for the sole purpose of trying to find safe and suitable housing for him and his fellow gang members.  (Doc. # 154 17-18.)

17

A plaintiff may state a claim for a violation of his First Amendment rights due to retaliation under 42 U.S.C. § 1983. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)(citation omitted).  The prisoner must (1) submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action, and (2) demonstrate that his or her First Amendment rights were actually chilled by the alleged retaliatory action.  *Pratt*, 65 F.3d at 806-07.  Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. *See Soranno's Gasco, Inc. V. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). The Ninth Circuit has recognized that prisoners have a fundamental First Amendment right to file prison grievances and pursue civil rights litigation, and "because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes*, 408 F.3d at 567 (citation omitted).

To obtain summary judgment on a claim of retaliation, Defendants have the initial burden to demonstrate that there are no genuine issues of material fact supported by evidence as to at least one of the essential elements of a retaliation claim and, as a result, the plaintiff cannot prevail on the claim. *Celotex*, 477 U.S. at 323. "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806. In analyzing a retaliation claim, a court should "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* at 807 (internal quotation marks and citation omitted).

Defendants provide the declaration of Pamela Del Porto, Inspector General of NDOC, and former Supervising Criminal Investigator at the NDOC's Inspector General's Office. (Doc. # 154 Ex. G. ¶ 2.) She has been in charge of the Security Threat Group identification and management since January 2004. (*Id.* at ¶ 3.) Ms. Del Porto addresses Plaintiff's claim that he was transferred to HDSP and from HDSP to LCC in retaliation for filing a lawsuit against NDOC. (*Id.* at ¶ 4.) During the last quarter of 2005, Plaintiff and other inmates affiliated with Mi Raza Unida (MRU), a prison gang, were moved to HDSP by NDOC administration in an effort to re-integrate inmates affiliated with this group back into general population. (*Id.* at ¶ 5.) Prior to this transfer, MRU inmates created safety and security concerns within NDOC due to continuous gang activity, including acts of violence and gang recruitment which resulted in MRU inmates being housed in protective segregation. (*Id.*) Two attempts were made at HDSP to re-integrate the MRU inmates, but neither attempt worked. (*Id.* at ¶ 6.) For safety and security of inmates, staff, and NDOC, the MRU inmates were placed in administrative segregation while NDOC reviewed possible housing options. (*Id.*) As a result of the review, a small housing unit at LCC, segregated from the general population, was set aside to house MRU inmates. (*Id.*) While the housing unit was segregated from general population, it afforded an approximate of general population privileges and opportunity. (*Id.*) Plaintiff and the other MRU gang members were transferred to LCC on May 31, 2006. (*Id.*)

The court finds that Defendants have met their burden of negating an element of Plaintiff's claim-that the action did not reasonably advance a legitimate correctional goal. The burden shifts to Plaintiff to prove the absence of legitimate correctional goals for the conduct of which he complains. The court finds that while Plaintiff provides allegations that he was transferred for retaliatory purposes, he provides no evidence to support this conclusion. Instead, the court finds that the Defendants transfer of Plaintiff to HDSP and then from HDSP to LCC is reasonably related to the legitimate correctional goal of maintaining order and security of the institution in the face of problems faced as a result of violence and gang recruiting concerning members of

1    MRU.  As a result, Defendants are entitled to summary judgment on this claim.

2        **3.    Access to Courts**

3            **a.  Handling of Legal Mail**

4        Plaintiff alleges that the handling of incoming and outgoing personal and legal mail was

5    erratic, delayed, and insufficient.  (Doc. # 37 56-57 at ¶¶ 264-271.)

6        Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*,

7    52 F.3d 264, 265 (9th Cir. 1995)(per curiam).  Prison officials have a responsibility to forward

8    mail to inmates promptly.  *See, e.g., Bryan v. Werner*, 516 F.2d 233, 238 (3d Cir. 1975).

9    Allegations that mail delivery was delayed for an inordinate amount of time are sufficient to

10    state a claim for violation of the First Amendment.  *See, e.g., Antonelli v. Sheahan*, 81 F.3d

11    1422, 1432 (7th Cir. 1996).  However, a temporary delay or isolated incident does not violate

12    a prisoner's First Amendment rights. *Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999)(policy

13    of diverting publications through property room reasonably related to prison's interest in

14    inspecting mail for contraband).

15        Here, while Plaintiff alleges generally that there are delays in the handling of mail, he

16    provides no evidence that he suffered direct injury as a result of the delay.  Moreover, he fails

17    to attribute this action to a named Defendant.  Defendants are correct that a person pursuing

18    a § 1983 claim must allege facts to demonstrate that he suffered an actual injury.  *Lujan v.*

19    *Defenders of Wildlife*, 504 U.S. 555, 560-61.  While the court appreciates that the perceived

20    delays in the handling of mail may be frustrating and inconvenient, Plaintiff has not asserted

21    facts or presented evidence to establish actual injury as a result of his allegations. To the extent

22    he is asserting a denial of his First Amendment right to access courts, Plaintiff must also

23    establish "actual injury" which he has failed to do with respect to these allegations.  Because

24    Plaintiff fails to establish actual injury, Defendants are entitled to summary judgment as to

25    this claim.

26        Plaintiff also asserts that NDOC has prohibited as a general practice, the receipt of bulk

27    mail catalogs into the Nevada prisons.  (Doc. # 37 19 at ¶ 31.)  Plaintiff does not assert how this

28                                    20

1    has injured him.  Moreover, the Supreme Court has previously determined that the First

2    Amendment is "barely implicated" by a prohibition on bulk catalogs in finding a prison

3    regulation doing the same was reasonable.  *Turner*, 482 U.S. at 86 (citing *Jones v. North*

4    *Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977)).  Therefore summary judgment

5    is appropriate as to this claim.

6                       **b.  Inadequacies of the Law Library**

7              Plaintiff alleges that as a result of the inadequate law library system, he has been

8    deprived of his right of access to courts. (Doc. # 37 34 at ¶¶ 124-145.)  Plaintiff claims that on

9    February 16, 2006, he tried to file a small claims petition concerning his personal property

10   claim, but it was rejected by that court as lacking jurisdiction. (*Id*. at ¶ 125.)  He tried to file

11   a small claims matter on March 20, 2006, as well, but it was rejected by that court as being

12   filed in error.  (*Id*. at ¶ 126.)  Plaintiff also  makes various allegations concerning the

13   inadequacies of the law library system and law clerks in general at HDSP. (*Id*. at ¶¶ 127-145.)

14   Plaintiff asserts that this caused him actual injury because it hindered and/or impaired his

15   efforts to proceed with a legal claim in a civil rights action. (*Id*. at       ¶ 136.)

16             Prisoners have a constitutional right of access to the courts.  *See Lewis v.  Casey*, 518

17   U.S. 343, 346 (1996).   This right "requires prison authorities to assist inmates in the

18   preparation and filing of meaningful legal papers by providing prisoners with adequate law

19   libraries or adequate assistance from persons trained in the law." *Bounds v.  Smith*, 430 U.S.

20   817, 828 (1977); *see also Madrid v.  Gomez*, 190 F.3d 990, 995 (9th Cir.  1999).  The right,

21   however, "guarantees no particular methodology but rather the conferral of a capability-the

22   capability of bringing contemplated challenges to sentences or conditions of confinement

23   before the courts...[It is this capability] rather than the capability of turning pages in a law

24   library, that is the touchstone" of the right of access to courts.  *Lewis*, 518 U.S. at 356-57.

25   Prison officials may select the best method to ensure that prisoners will have the capability to

26   file suit.  *See id*.  at 356.  Prisons "might replace libraries with some minimal access to legal

27   advice and a system of court-provided forms...that asked the inmates to provide only the facts

28                                              21

and not to attempt any legal analysis." *Id.* at 352.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *See Lewis*, 518 U.S. at 348 (citation and internal quotations omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008)(explaining that "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim for denial of access to legal materials)(citing *Lewis*, 518 U.S. at 353, n.4); *Madrid*, 190 F.3d at 996. Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Lewis*, 518 U.S. at 362. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *See Lewis*, 518 U.S. at 353 n. 3, 354-44; *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1159-60 (9th Cir. 2003)(explaining that "a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim."); *Madrid*, 190 F.3d at 995.

Here, Plaintiff claims that deficiencies within the grievance system hindered his access to courts by frustrating efforts to file his small claims matter. As stated above, the right of access to courts is limited to non-frivolous direct criminal appeals, habeas proceedings and § 1983 actions. Plaintiff has no right of access to courts to file a small claims matter.

With respect to Plaintiff's claims concerning the inadequacies of the law library and law clerks, to the extent Plaintiff claims that this frustrated the filing of his small claims matter, he has no viable First Amendment claim of access to the courts. To the extent he claims that it hindered his ability to file his civil rights action, he has not demonstrated how he has suffered actual injury.

For the foregoing reasons, Defendants motion for summary judgment should be granted as to Plaintiff's access to the courts claims under the First Amendment.

1  **F.  EIGHTH AMENDMENT**

2      Plaintiff alleges that on May 31, 2006, he was transported with nineteen other inmates

3  to LCC, and he was forced to wear white-jumpsuits, shackles, a waist chain connected to

4  handcuffs, and an anti-picking device known as a black-box protecting the handcuffs for the

5  eight hour trip to LCC.  (Doc. # 37 ¶ 66.)  Plaintiff asserts that upon arrival at LCC, he

6  complained of cuts, bruises, and/or abrasions caused by wearing the black-box device.  (*Id*.

7  at ¶ 67.)  Plaintiff appears to claim a violation of his Eighth Amendment rights as he refers to

8  this incident as imposing cruel and unusual punishment.  (*Id*.  at ¶ 68.)

9      The Eighth Amendment prohibits cruel and unusual punishment in the prison setting.

10  This includes the use of excessive force.  *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992) ("'the

11  unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment

12  forbidden by the Eighth Amendment.'" (citation omitted)).  "[W]henever prison officials stand

13  accused of using excessive physical force in violation of the Cruel and Unusual Punishment

14  Clause, the core judicial inquiry is...whether force was applied in a good-faith effort to

15  maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503

16  U.S. at 6-7. "In determining whether the use of force was wanton and unnecessary, it may also

17  be proper to evaluate the need for application of force, the relationship between that need and

18  the amount of force used, the threat reasonably perceived by the responsible officials, and any

19  efforts made to temper the severity of a forceful response." *Id*. (internal quotations and

20  citations omitted). The extent of injury suffered by the inmate is another factor; however,

21  while "[t]he absence of serious injury is...relevant to the Eighth Amendment inquiry, [it] does

22  not end it." *Id*. at 7. The extent of injury "is one factor that may suggest 'whether the use of

23  force could plausibly have been thought necessary' in a particular situation" and may provide

24  an indication of the amount of force applied. *Id*. (citation omitted).

25      "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

26  Punishment Clause [of the Eighth Amendment] depends upon the claim at issue..." *Hudson*,

27  503 U.S. at 8. "In the excessive force context...[w]hen prison officials maliciously and

28                                                         23

1   sadistically use force to cause harm, contemporary standards are always violated...whether or

2   not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical

3   punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity

4   of injury." *Id*. at 9 (citations omitted). However, not "every malevolent touch by a prison guard

5   gives rise to a federal cause of action." *Id*. (citation omitted). "The Eighth Amendment's

6   prohibition of cruel and unusual punishments necessarily excludes from constitutional

7   recognition de minimis use of physical force, provided that the use of force is not of a sort

8   repugnant to the conscience of mankind." *Id*. at 9-10 (internal quotations and citations

9   omitted).

10       The court in *Hudson* clearly held that the use of excessive force against an inmate may

11   constitute cruel and unusual punishment in violation of the Eighth Amendment, even in the

12   absence of serious injury.  In *Wilkins v. Gaddy*, the Supreme Court expanded on its holding

13   insofar as it concerns "de minimis" force.  *Wilkins v. Gaddy*, 130 S.Ct. 1175 (2010).  There, the

14   district court dismissed an excessive force claim, determining that the injuries suffered by the

15   prisoner were de minimis.  *Id*. at 1176-77. The appellate court affirmed the dismissal, and the

16   Supreme Court reversed and remanded.  *Id*.  The Supreme Court noted that "[i]njury and

17   force...are only imperfectly correlated, and it is the latter that ultimately counts. An inmate

18   who is gratuitously beaten by guards does not lose his ability to pursue an excessive force

19   claim merely because he has the good fortune to escape without serious injury." *Id*. at 1178-79.

20   Thus, the question in this case turns on whether the force allegedly applied was applied in a

21   good faith effort to maintain or restore discipline, or maliciously and sadistically for the

22   purpose of causing harm.  *Hudson*, 503 U.S. at 7.

23       It is clear that the wrist restraints were used during transportation to ensure the

24   safety of NDOC staff involved in the transport of inmates.  The court agrees with

25   Defendants that there is no evidence that the black-box wrist restraints were used

26   maliciously and sadistically to cause harm, but rather, they were used in a good faith

27   effort to protect the NDOC staff effectuating the transport of these inmates.

28

24

1   Accordingly, summary judgment should be granted as to this claim.

2   **G.     ADDITIONAL CLAIMS NOT ADDRESSED BY DEFENDANTS' MOTION**

3        **1.  Due Process Related to Administrative Segregation**

4        Defendants' motion for summary judgment did not address Plaintiff's claim that his

5   due process rights were violated as a result of being subject to de facto administrative

6   segregation for a period of eleven years without receiving the proper classification review

7   procedures. (*See* Doc. # 165 48-53.) Defendants contend that they did not address this claim

8   because Plaintiff failed to include it in his amended complaint.  (Doc. # 179 5, 17-18.)

9   Defendants also assert that Plaintiff has already successfully prevailed in a lawsuit alleging the

10  same cause of action.  (*Id*.)

11       Count 1 of Plaintiff's amended complaint generally alleges that Defendants violated

12  Plaintiff's due process rights by failing to adhere or comply with the standards set by clearly

13  established state/federal laws governing notice, placement, and periodic reviews of inmates

14  in segregated confinement.  (Doc. # 37 9.)  Plaintiff does allege that he previously filed a

15  complaint in federal court for due process violations as a result of being held in de facto

16  administrative segregation (Case No.   3:02-cv-004690HDM (VPC)), and was granted

17  summary judgment and awarded nominal damages.  (Doc. # 37 12 at ¶ 9.)

18       Plaintiff alleges that Defendants have continued to disregard his rights by continuing

19  to retain him in de facto administrative segregation from September 30, 2005 until October

20  10, 2006.  (Doc. # 37 29 at ¶ ¶ 92-94.)  Plaintiff asserts that he was put into administrative

21  segregation on three different occasions, and should be aggregated for purposes of analysis.

22  (*Id*. At ¶ 93.)  Plaintiff asserts that Defendants Crawford, Slansky, McDaniel, Neven, Endel,

23  Shaules, Trivin, Conmay, and Swann violated his constitutional rights by confining him in de

24  facto administrative segregation from August 10, 1999 until September 30, 2005, and then

25  Defendants McDaniel, Whorton, Cox, Conmay, Del Porto, Neven, Willis, Baca, Church, Gerke,

26  Endel, Shaulis, and Irvin deprived him of his rights from September 31, 2005 until June 27,

27  2006, and from August 29, 2006 until October 10, 2006, by placing him in administrative

28                          25

segregation again.  (*Id*. At ¶ 95.)

To the extent Plaintiff is re-asserting a claim that has already been adjudicated, that claim is barred by the doctrine of res judicata.  With respect to the allegation that Plaintiff was deprived of his due process rights as a result of being placed in de facto administrative segregation from September 31, 2005 to June 27, 2006, and August 29, 2006 to October 10, 2006, the court finds that Plaintiff has not included sufficient facts or evidence to apprise Defendants how his rights were violated or to tie an individual defendant to the alleged deprivation of his rights.  Accordingly, this claim should be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e).

**2.    Eighth Amendment Deliberate Indifference to Serious Medical Need**

In his opposition, Plaintiff contends that he has asserted a claim for deliberate indifference to a serious medical need under the Eighth Amendment in connection with his chronic ailment, Herpes Simplex II virus.  (Doc. # 165 55-59.)  Defendants contend that they did not address this claim because it was not alleged in his amended complaint.  (Doc. # 179 6.)  The court has reviewed Plaintiff's amended complaint and agrees with Defendants that Plaintiff did not include facts to apprise Defendants that he was asserting an Eighth Amendment claim based on deliberate indifference to his Herpes Simplex II virus.  As a result, this claim should be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e).

**H.    REMAINING STATE LAW CLAIMS**

To the extent Plaintiff asserts claims under Nevada law, the court will not exercise its discretion to retain supplemental jurisdiction over those claims, and they should be dismissed without prejudice.  "When, as here, the court dismisses the federal claim leaving only the state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989).

/ / /

/ / /

26

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an Order as follows:

(1)     Plaintiff's claims, as set forth at III.B.3(1), (2) and (4)-(16), *supra*, are **DISMISSED, WITHOUT PREJUDICE**, as a result of Plaintiff's failure to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a).

(2)     Plaintiff's claim that he suffered hearing loss as a result of his confinement (Doc. # 37 14-16 at ¶¶ 1-10), is **DISMISSED, WITH PREJUDICE**, because it is barred by the applicable statute of limitations.

(3)     Plaintiff's claims: (1) alleging due process violations as a result of being confined in de facto administrative segregation from September 31, 2005 to June 27, 2006 and August 29, 2006 to October 10, 2006, and (2) alleging deliberate indifference to a serious medical need in violation of the Eighth Amendment, are **DISMISSED, WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915(e).

(4)     Plaintiff's remaining state law claims are **DISMISSED, WITHOUT PREJUDICE**.

(5)     **GRANTING** Defendants' motion for summary judgment as to all remaining claims.

The parties should be aware of the following:

1.     That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

        2.      That this Report and Recommendation is not an appealable order and that

any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until

entry of the District Court's judgment.

        DATED:   February 8, 2011.

        _____
        UNITED STATES MAGISTRATE JUDGE

28